```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF ALABAMA
                         SOUTHERN DIVISION
```

EDDIE WALKER, as guardian and )
next friend of TIFFANY L.     )
WOODARD, a minor,             )
                              )
     Plaintiff,               )
                              )     Civil Action No.
v.                            )
                              )     99-AR-1704-S
                              )
D&D FOOD SYSTEMS, INC. d/b/a  )
MILO'S HAMBURGERS,            )
                              )
     Defendant.               )

FILED 00 JUL 10 AM 9:56 U.S. DISTRICT COURT N.D. OF ALABAMA

ENTERED JUL 10 2000

## MEMORANDUM OPINION

Before the court is defendant's motion for summary judgment. Plaintiff, Tiffany L. Woodard ("Woodard"),[1] alleges that defendant, D&D Food Systems, Inc. d/b/a Milo's Hamburgers ("Milo's"), engaged in sexual harassment and retaliation in violation of Title VII. For the reasons set forth in the opinion below, the court will grant defendant's motion as to both counts.

Milo's hired Woodard in December of 1997. Woodard quit at some point, but was rehired in early 1998 to work at Milo's Eastwood store. Woodard was terminated on August 28, 1998. Woodard alleges that from April until August of 1998, she was

---

[1] The court is aware that Eddie Walker, as guardian, is the official plaintiff, because Woodard herself was only 17 at the time the suit was filed. However, for simplicity's sake, the court will refer to Woodard as plaintiff since she is the one to whom the evidentiary submissions pertain and refer.



subjected to sexually harassing comments by Charles Satterwhite ("Satterwhite"). Satterwhite was Woodard's co-worker until he was promoted to a supervisory position in August of 1998. Thus, with the exception of one particular alleged comment, it appears that the alleged harassment occurred while Satterwhite was Woodard's co-worker, and not her supervisor.

On August 23, 1998, Milo's says that Woodard was scheduled to work until 10:00 p.m. Assistant manager Osha Winston ("Winston") asked Woodard to clean the dining room around 9:00. Woodard claims that she had clocked out already, so she refused to clean the dining room unless she was allowed to clock back in. Winston told Woodard that he was going to write her up for refusing to clean the dining room and Woodard told him, "Fine." (Woodard depo. at 21.) Winston and Woodard then had a verbal altercation. Woodard admits that she cursed Winston, but says that he cursed her first. At some point, Woodard called her boyfriend to come to the store to help her because, she claims, Winston threatened to beat her up. Another employee, John David Franklin ("Franklin") took Woodard outside in an attempt to calm her down and avoid further confrontation with Winston.

Winston wrote up Woodard for insubordination. In a handwritten note, he described what had happened the evening of

August 23, 1998. Winston then attached a disciplinary form to his handwritten note and gave them to Scott Minear ("Minear"), who was the general manager of Milo's Eastwood location at the time. In response to Winston's write-up, Minear investigated the incident. He interviewed Woodard to get her side of the story on August 24, 1998. During the interview, Woodard told Minear that she had been and was being sexually harassed by Satterwhite, who at that point had been promoted to a supervisory position. This was the first time that Woodard had mentioned the alleged harassment to Minear. Woodard claims that two days prior, on August 22, 1998, she had told Phil Kilgore ("Kilgore"), an assistant manager, about Satterwhite's behavior.

Minear reported Woodard's allegation of harassment to Felix Melendez, ("Melendez"), Milo's area manager. Minear and Melendez talked to Satterwhite, who denied saying or doing anything inappropriate to Woodard. On August 26, 1998, Satterwhite was given a verbal warning and documentation of Woodard's allegations were placed in his personnel file. On August 27, 1998, Woodard filed a charge of discrimination with the EEOC. Woodard was fired on August 28, 1998.

Although the timing is not entirely clear, from what the court can piece together, another female Milo's employee, Deliska Smith

("Smith"), talked to Minear either on August 30 or 31, 1998, and made allegations of sexual harassment against Satterwhite. On September 9, 1998, after investigating Smith's complaint, Milo's fired Satterwhite.

### Summary Judgment Standard

Rule 56(c), Fed. R. Civ. P. provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Supreme Court has emphasized that this language means exactly what it says: there must be a <u>genuine</u> issue of <u>material</u> fact, not merely some factual dispute. See <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 2510 (1986). What this standard means in practice is that "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." <u>Anderson</u>, 477 U.S. at 249, 106 S.Ct. at 2511 (citing <u>First National Bank of Arizona v. Cities Service Co.</u>, 391 U.S. 253, 88 S.Ct. 1575 (1968)).

On defendant's motion for summary judgment, the court must look at the evidence, construed in plaintiff's favor, to see if a

jury could return a verdict for plaintiff. If so, defendant's motion for summary judgment must be denied. If, however, as a matter of law, a jury could not return a verdict for plaintiff, defendant's motion must be granted.

### Count 1: Sexual Harassment

Woodard claims that Satterwhite said the following to her:[2]

- "Oh, your butt sho look good today."
- "Oooooh, your butt sho is big."
- "Oooooh, wear those pants to work that you had on yesterday cause yo butt sho look good in them."
- "I don't like it when you got on those pants; I want you to wear those other pants cause it make yo butt look good."
- "Unh! Look at herrrr butt."
- Called her "Jello" and when asked why, he responded that her butt moved like Jello.
- "Talkin 'bout, oooooh, I bet yo pussy feels good now that you went to the restroom."[3]
- Told her that if she would be his girlfriend, he would fix the

---

[2] The court notes that it is quoting directly from plaintiff's affidavit, whose author must have studied under Joel Chandler Harris, so the court will not change the wording or use the sign "sic" to indicate a misspelling or grammatical error.

[3] This is the comment which Woodard alleges took place after Satterwhite was promoted to a supervisory position.

brakes on her car. Woodard also says that Satterwhite grunted and moaned when she was around and that he reached down as if to grab her between her legs and grabbed the chair seat between her legs.

The court notes that defendant has filed a motion to strike the following statements in Woodard's affidavit on the basis that they are in direct contradiction to her deposition testimony:

- Her allegation that Satterwhite said "Oooooh yo butt sho is big."
- Her allegation that Satterwhite said, "Unh! Look at herrr butt."
- Her allegation that Satterwhite grunted and moaned when she was around.
- Her allegation that Satterwhite reached down and grabbed the chair seat between her legs.

Although the court will write a separate order ruling on that motion, the court notes that for the purposes of ruling on defendant's motion for summary judgment, defendant's motion to strike is inconsequential. Even if the court considers the above statements along with Woodard's other allegations, Satterwhite's alleged statements and actions, in this court's opinion, still do not rise to the level of a hostile work environment.

> As the Supreme Court has pointed out:
>
> [N]ot all workplace conduct that may be described as "harassment" affects a "term, condition, or privilege" of employment within the meaning of Title VII. . . . For [harassment] to be actionable, it must be sufficiently severe or pervasive "to alter the conditions of [the victim's] employment and create an abusive working environment."

Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 67, 106 S.Ct. 2399, 2405 (1986)(citations omitted). In a recent sexual harassment decision, the Eleventh Circuit elaborated upon what kinds of acts and/or statements constitute a hostile work environment, and it set the bar fairly high. See Menzoda v. Borden, Inc., 195 F.3d 1238 (1999) (en banc). The Eleventh Circuit outlined in great detail the facts of many cases in which other circuit courts of appeals did not find a hostile work environment. As Milo's correctly points out, the cases described by the Eleventh Circuit in Mendoza as failing to meet the burden of establishing a hostile work environment involve facts far more egregious than the facts of this case. While the court certainly does not condone any of the things which Satterwhite allegedly did and said, the court also is aware of the Supreme Court's admonition that Title VII is not meant to be a civility code. See, e.g., Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S.Ct. 2275, 2283-2284 (1998), and Oncale v. Sundower Offshore Services, Inc., 523 U.S. 75, 81,

7

118 S.Ct. 998, 1002 (1998). What was considered inappropriate language 18 years ago when this judge was appointed are now things that one hears regularly on prime time television. Title VII jurisprudence recognizes that times and sensitivities do change and have changed, and accordingly requires that a plaintiff prove more than mere discomfort or irritation in order to sustain a claim of hostile work environment harassment. Based on this principle and on the Eleventh Circuit's *en banc* Mendoza opinion, the court finds that this alleged harassment is not severe or pervasive enough to constitute an actionable hostile work environment. Accordingly, the court will grant defendant's motion for summary judgment as to plaintiff's hostile work environment claim.[4]

---

[4] Because the court has determined that Woodard cannot show that she was subjected to harassment sufficiently severe or pervasive enough so as to create a hostile work environment, it need not reach the question of whether Milo's would be vicariously liable for Satterwhite's actions. That would be an interesting question in this case because, as far as the court can tell from the facts presented to it, almost all of Satterwhite's alleged harassment occurred while he was Woodard's co-worker, although Woodard alleges that one particular comment was made after Satterwhite was promoted to a supervisory position. Because the standard for vicarious employer liability in the Eleventh Circuit is different depending on whether the alleged harasser is a co-worker or a supervisor, the court would have to determine which standard to apply and whether, under either or both standards, Milo's could be held vicarious liable. It is unlikely that Milo's would be liable under the circumstances of this case because, at least as to the harassment that allegedly occurred when Satterwhite was Woodard's co-worker, Woodard would bear the burden of proving that Milo's had adequate notice of the alleged harassment and that it failed to take adequate remedial steps. See Coates v. Sundor Brands, Inc., 164 F.3d 1361, 1363-1364 (11th Cir. 1999). See also Morgan v. Fellini's Pizza, Inc., 76 F. Supp. 2d 1368 (N.D. Ga. 1999)(holding that defendant's burden of proving an affirmative defense with regard to a supervisor's harassment as set out in Faragher does not apply to co-worker

**Count 2: Retaliation**

In order to establish a prima facie case of retaliation, Woodard must show: (1) that she engaged in protected activity; (2) that the decision-maker was aware of that activity; (3) that she suffered an adverse employment action; and (4) there was a causal link between the protected activity and the adverse action. See Maniccia v. Brown, 171 F.3d 1364, 1369 (11th Cir. 1999). In Maniccia, the Eleventh Circuit added employer knowledge as a separate and distinct element of the prima facie case of retaliation. Prior Eleventh Circuit precedent explained that, in order to show a causal link, "At a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took the adverse employment action." Goldsmith v. City of Atmore, 996 F.2d 1155, 1163 (11th Cir. 1993). Therefore, whether it is a separate element or whether it is part of the causal connection prong, employer knowledge must be shown by a plaintiff to establish her prima facie case.

Milo's argues that Woodard cannot establish her prima facie case because Minear did not know of Woodard's EEOC charge when he fired her on August 28. The court disagrees. Woodard complained

---

harassment, and accordingly, that plaintiff bears the burden of proving that defendant knew or should have known of the harassing conduct and that defendant failed to take immediate and appropriate corrective action).

to Minear about the alleged harassment on August 24, 1998, when Minear was investigating the incident with Winston. Because a complaint of harassment to a manager is protected activity under Title VII, see Rollins v. Florida Dept. of Law Enforcement, 868 F.2d 397, 400 (11th Cir. 1989), Milo's argument that it did not know of Woodard's EEOC charge which was filed on August 27 when it fired her on August 28 is not a basis for granting Milo's motion for summary judgment as to Woodard's retaliation claim.

Because Woodard has established her prima facie case, Milo's must come forward with a legitimate non-discriminatory reason for its adverse decision. Here, Milo's submits that it fired Woodard for an act of insubordination and otherwise improper behavior with Winston. This is certainly a legitimate, non-discriminatory reason for Woodard's termination. As the Eleventh Circuit has pointed out in an often quoted passage, an employer "may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1187 (11th Cir. 1984)(citations omitted). Again, insubordination is a good reason for firing an employee, that is, unless the charge of insubordination is a "made up" reason to disguise a proscribed reason.

In spite of the legitimate, non-discriminatory reason articulated by Milo's, Woodard can survive summary judgment if she puts forth evidence that would tend to show that Milo's explanation is unworthy of credence or if she puts forth other evidence of pretext. The court can find nothing that meets this burden when Woodard herself admits to cursing Winston and refusing to clean the dining room. These are acts of insubordination. Therefore, there is no evidence that Milo's stated reason of insubordination is unworthy of credence. Because Woodard has produced no other evidence of pretext, the court will grant defendant's motion for summary judgment as to plaintiff's retaliation claim.

### Conclusion

A separate and appropriate order will be entered.

DONE this 10th day of July, 2000.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE